IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHAEL D. MILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:24-cv-02475-SHM-tmp |
| v. ) | |
| ) | |
| KEVIN GENOVESE and JOHNNY FITZ, ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER MODIFYING THE DOCKET;
DISMISSING THE COMPLAINT (ECF NO. 1) WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART;
GRANTING LEAVE TO AMEND THE CLAIMS DISMISSED WITHOUT PREJUDICE;
AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 3)

On July 1, 2024, Plaintiff Michael D. Mills filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1), a motion for leave to proceed *in forma pauperis* (ECF No. 2), and a motion for a temporary restraining order (ECF No. 3 (the "TRO Motion")). Mills was confined at the West Tennessee State Penitentiary (the "WTSP"), in Henning, Tennessee when he filed the complaint (ECF No. 1 at PageID 1-2), and he remains confined at the WTSP. (*See* https://foil.app.tn.gov/foil/details.jsp (Tennessee Department of Correction ("TDOC") Felony Offender Information website) (last accessed Feb. 5, 2025).) On July 3, 2024, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) For the reasons explained below, the complaint is DISMISED WITH PREJUDICE in part and DISMISED WITHOUT PREJUDICE in part, leave to amend the claims dismissed without prejudice is GRANTED, and the TRO Motion is DENIED.

I.     **BACKGROUND**

In the complaint, Mills describes several events that allegedly deprived him of his constitutional rights.

First, Mills alleges that he was reclassified on January 31, 2024, from maximum security to close security status at the WTSP, but that, on February 13, 2024, TDOC Assistant Deputy Commissioner Kevin Genovese ("Genovese") and WTSP Warden Johnny ("Fitz"): (1) removed Mills from close custody status and (2) returned him to maximum custody status (the "Reclassification"). (ECF No. 1 at PageID 4-5.) Mills alleges that the Reclassification "denied due process, thus violating his liberty interest and his security status." (*Id.* at PageID 5.) Mills complains that he "had no hearing before a classification panel." (*Id.* at PageID 8.) Mills also complains that he "was about to be shipped from [the WTSP] to Whiteville Correctional Facility in Whiteville, Tennessee in January 2023, "but the transfer order was cancelled […] with no hearing at all." (*Id.* at PageID 8-9; *see also id.* at PageID 10 (alleging that "still no reason was given [and] none of the classification policies and procedures were followed").) Mills denies that he "had write-ups during that time that would've changed his custody level to close." (*Id.* at PageID 10.) Mills grieved those issues but received no relief. (*Id.*)

Second, Mills alleges that cognitive behavioral intervention counselor R. Newbern told Mills on May 29, 2024, that Fitz and correctional administrator April Buckner gave Newbern approval for Mills to be referred to the "restrictive housing step down" program. (*Id.* at PageID 5-6.) Mills alleges that he "has met the requirements to be in the step-down intervention program." (*Id.* at PageID 7.) Mills alleges that Newbern told Mills on June 3, 2024, that Genovese would "not […] allow[] Mills to be accepted into any programs" (the "Program Denial"). (*Id.* at PageID 6.) Mills alleges that the Program Denial "is a clear case of discrimination, prejudice, retaliation,

and abuse of authority from Genovese." (*Id*. at PageID 7.) Mills alleges that he is "being denied the procedures that are set in place by the [TDOC]." (*Id*.)

Mills argues that the above-referenced actions of Genovese and Fitz constitute "official misconduct"; "retaliation"; "denial of due process"; "abuse[] [of] authority"; violation of the Defendants' "code of conduct and oath of correction department employees"; failure to "uph[o]ld the ethical rules governing their professions"; failure to "follow[] the established disciplinary procedures"; and "direct[] contradict[ion] [of] TDOC Policy 404.10(VI)(B)(30) which clearly states that the placement of inmates on administrative segregation [is] subject[] to review and approval by the assistant commissioner of prisons." (*Id*. at PageID 7-11, 14, 16.)

Third, Mills alleges that he was: (1) "assaulted" by corrections officer Kenneth Eudy ("Eudy") and Sergeant Robert Fine ("Fine") on February 22, 2023, at the WTSP; (2) "tazed [on an unspecified date] [by] Lieutenant William Dyson ("Dyson") numerous times [when] Mills was not resisting at all[,] and chemical agents were also used"; and (3) "brought out of his cell exposed naked to the whole pod" on an unspecified date. (*Id*. at PageID 11-12.)

The Clerk shall MODIFY the docket to add three (3) Defendants: (1) WTSP Correctional Officer Kenneth Eudy; (2) WTSP Sergeant Robert Fine; and (3) WTSP Lieutenant William Dyson.

Mills seeks (1) injunctive relief (a) ordering Fitz to (i) return Mills to the general population at the WTSP, (ii) expunge the Reclassification from Mills's record, and (iii) award lost sentence reduction credits to Mills; (b) ordering Genovese to "stay out of all matters that pertain to Mills. Stop intervening"; and (c) allowing Mills "to place incompatibles against any TDOC staff that he needs to to [sic] ensure his safety within the prison system" and (2) "such other relief as it may appear that Plaintiff is entitled [sic]." (*Id*. at PageID 16-17.)

The complaint is construed to alleged claims under § 1983 of (1) deprivation of due process based on the Reclassification, (2) failure to follow TDOC policies and procedures, (3) retaliation, (4) inadequate prison grievance process; (5) excessive force; and (6) harassment.

## II.     ANALYSIS

### A.     Claims Under § 1983 Against Fitz And Genovese In Their Individual Capacities

Mills sues Fitz and Genovese in their individual capacities.  (ECF No. 1 at PageID 1-2, 4.)

#### 1.     Denial Of Due Process Based On The Reclassification And The Program Denial

Mills alleges that the Reclassification implemented by Fitz and Genovese deprived Mills of due process because those Defendants: engaged in "official misconduct"; "abused [their] authority"; ignored the "code of conduct and oath of correction department employees"; failed to "uph[o]ld the ethical rules governing their professions"; failed to "follow[] established disciplinary procedures"; and failed to follow "TDOC Policy 404.10(VI)(B)(30) which clearly states that the placement of inmates on administrative segregation [is] subject[] to review and approval by the assistant commissioner of prisons."  (ECF No. 1 at PageID 7-11, 14, 16.)  Mills's claim of due process violation does not merit relief because his security status and housing classification do not rise to the level of a constitutional violation.

An inmate does not have a constitutionally protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates do not have a liberty interest in their prison assignments); *see also Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship" "in relation to the ordinary incidents of prison life"); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002) (an inmate in state custody has no constitutional right

to confinement in a particular detention facility); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir. 1992) (federal law does not create any liberty interest that would allow a state prisoner to avoid a reclassification and transfer to a close security prison); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir. 1986) ("A prisoner has no inherent constitutional right to be housed in a particular institution or to enjoy a particular security classification") (citations omitted).

This Court does not have the authority to supervise the classification and housing assignment of inmates. *See Meachum v. Fano*, 427 U.S. 215 (1976) (the Due Process Clause is not implicated by the assignment of a prisoner to a particular prison within a state or by the prisoner's transfer to another institution, and "[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States"); *Montanye v. Haymes*, 427 U.S. 236 (1976) (inmate had no liberty interest in "remain[ing] at any particular prison and no justifiable expectation that he would not be transferred unless found guilty of misconduct). "[M]aintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures." *Hayes v. Tennessee*, 424 F. App'x 546, 550 (6th Cir. 2011). Courts "have deferred to judgments of prison officials in upholding these regulations against constitutional challenge." *Id.* (quoting *Shaw v. Murphy*, 532 U.S. 223, 229 (2001)). "The Supreme Court has repeatedly warned that 'it is difficult to imagine an activity in which a state has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" *Smith v. Dewine*, 476 F. Supp. 3d 635, 666 (S.D. Ohio 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)). Mills fails to state a claim to relief for deprivation of due process based on the Reclassification.

To the extent Mills alleges a claim under § 1983 that the Program Denial deprived him of his right to due process, the conclusion is the same. The deprivation of an ability to participate in prison rehabilitative programs does not violate the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally, ... deprivations of this kind simply are not punishments. We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids to rehabilitation violates the Constitution"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs").

For these reasons, Mills does not state a claim of constitutional deprivation based on his security status and housing classification. Mills's claim of due process violation is DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

### 2. Failure To Follow TDOC Policies And Procedures

Mills alleges that Fitz and Genovese failed to follow (1) TDOC Policy 404.10(VI)(B)(30), (2) the "code of conduct and oath of correction department employees", (3) the "ethical rules governing their professions", and (4) the "established disciplinary procedures." (ECF No. 1 at PageID 7-11, 14, 16.) Mills's allegation does not merit relief under § 1983.

First, an inmate's allegation that jail officials failed to follow a correctional facility's administrative policies does not by itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007). Mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *See Sandin*, 515 U.S. at 483–84; *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 728–30 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995)).

Second, § 1983 does not provide a remedy for violating state laws or regulations. *Lewellen v. Metro. Gov't*, 34 F.3d 345, 347 (6th Cir. 1994); *see also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding a violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Mills does not have a constitutional right to have Fitz and Genovese follow TDOC policies and procedures.

Mills's claim against Fitz and Genovese under § 1983 of failure to follow TDOC policies and procedures is DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

3. **Retaliation Claim Against Genovese**

Mills alleges that the Program Denial "is a clear case of […] retaliation from Genovese." (ECF No. 1 at PageID 7.) Mills does not allege facts stating a claim to relief for unconstitutional retaliation.

A claim of retaliation in violation of the First Amendment has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. Filing a prison grievance also is protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). "[T]he plaintiff must be able to prove that the exercise of the protected

right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive").

Mills does not allege that he was engaged in protected conduct, *see Thaddeus-X*, 175 F.3d at 394, on or around the time of the Program Denial. (*See* ECF No. 1 at PageID 6-7.) Mills, therefore, cannot demonstrate a causal connection between (1) protected conduct by Mills and (2) the purportedly adverse action of the Program Denial by Genovese. Without that showing of causal connection under *Thaddeus-X*, the complaint cannot demonstrate close temporal proximity between protected conduct and adverse action, from which to infer a retaliatory motive by Genovese.

Mills's retaliation claim against Genovese in his individual capacity is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### 4. Inadequate Prison Grievance Process

Mills alleges that his grievance about the Reclassification was not investigated by "a[n] impartial factfinder." (ECF No. 1 at PageID 10.) Mills alleges also that his "grievance to Commissioner Frank Strada [had] no action taken." (*Id.*) Mills's allegations are construed as a claim of inadequate prison grievance process. His claim does not merit relief under § 1983.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*,

3 F. App'x 346, 348 (6th Cir. 2001) (holding that the plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"). "There is no inherent constitutional right to an effective prison grievance procedure." *LaFlame*, 3 F. App'x at 348 (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Prisoners have a First Amendment right to file grievances against prison officials, but they have no similar right to an investigation of their allegations. *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed to investigate his grievances properly because there is no "federally protected liberty interest" in a resolution or investigation of grievances).

Mills does not have a constitutional right to an investigation of his grievances described in the complaint, *see Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation"). Mills does not allege that the Defendants' conduct described in the complaint adversely affected Mills's "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted).

Because a § 1983 claim cannot be premised on contentions that a prison's grievance procedure was inadequate, *see Mitchell*, 487 F.3d at 378, Mills's claim of inadequate grievance process is DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

### B. Claims Against Eudy, Fine, And Dyson In Their Individual Capacities[1]

#### 1. Excessive Force

Mills alleges that he was "assaulted" by Eudy and Fine at the WTSP on February 22, 2023. (ECF No. 1 at PageID 11-12.) Mills does not describe the specific actions that Eudy and Fine took during the assault. Mills also alleges that Dyson "tazed Mills who was not resisting at all. Plaintiff was already restrained when he was tazed numerous times. Chemical agents were also used." (ECF No. 1 at PageID 12.) Mills does not allege the circumstances of the alleged assault and tazing, such as where the events occurred, whether Mills had refused verbal commands before or during the events, whether facility safety and security at the WTSP were compromised when the events occurred, or whether Dyson tazed other inmates to restore order. (*See id.*) Mills alleges in a subsequent section of the complaint that he suffered "cuts and bruises to his body", but it is unclear whether those injuries occurred during the alleged assault or tazing. (*Id.*) The Court construes Mills's allegations as a claim of excessive force.

The Eighth Amendment protects a convicted inmate[2] from cruel and unusual punishments, including "the unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Wilson v. Seiter*, 501 U.S. 294 (1991). The Eighth Amendment's subjective standard takes into account a defendant's state of mind. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Establishing an Eighth Amendment claim

---

[1] Mills does not allege whether he sues Eudy, Fine, and Dyson in their official or individual capacities. The plausible inference from the complaint is that Mills seeks to sue all Defendants in their individual capacities. (*See* ECF No. 1 at PageID 1-2.)

[2] According to the TDOC Felony Offender Information website, Mills is a convicted inmate. (*See* https://foil.app.tn.gov/foil/details.jsp (showing that Mills began, *inter alia*, a twenty-five (25) year sentence on December 25, 2008, for especially aggravated kidnapping and especially aggravated robbery, and his sentence end-date is January 30, 2034).)

of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

Mills alleges no facts from which to plausibly infer that the assault by Eudy and Fine or the tazing by Dyson were objectively harmful. Mills does not describe those Defendants' conduct during the alleged events. Although Mills alleges in other parts of the complaint that he suffered "cuts and bruises to his body", it is unclear whether those injuries occurred during the alleged tazing by Dyson or during the alleged assault by Eudy and Fine. (ECF No. 1 at PageID 12.)

Mills also fails to allege facts about Eudy and Fine's state of mind during the assault and Dyson's state of mind during the tazing. For example, because Mills alleges no facts about the circumstances of the tazing, there is no basis for the Court to plausibly infer that Dyson tazed Mills with a malicious or sadistic intent, rather than as a good faith effort to maintain order at the jail. (*See id.*)

For these reasons, Mills fails to allege facts demonstrating that (1) Eudy and Fine used objectively harmful excessive force and acted with a sufficiently culpable state of mind during the assault and (2) Dyson used objectively harmful excessive force and acted with a sufficiently culpable state of mind during the tazing. *See Hudson*, 503 U.S. at 8; *Graham*, 490 U.S. at 397. Mills's claim of excessive force against Eudy, Fine, and Dyson in their individual capacities is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

2. **Harassment**

11

Mills alleges that Dyson "brought [Mills] out of his cell exposed naked to the whole pod" on an unspecified date. (ECF No. 1 at PageID 11-12.)

It is well settled that harassment at the hands of prison officials does not constitute a deprivation of constitutional rights. *See*, *e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment."); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (holding that an officer's "reprehensible" action of offering sexual favors to the plaintiff-inmate did "not rise to the level of a constitutional violation"). "Just as the Constitution 'does not mandate comfortable prisons,' *Wilson*, 501 U.S. 298 (quoting *Rhodes*, 452 U.S. at 349), it does not mandate polite prison guards." *Wingo v. Tennessee Dep't of Corr.*, No. 10-1259, 2011 WL 13186535, at *4 (W.D. Tenn. Aug. 5, 2011).

Mills's claim of harassment under § 1983 is DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

### III. AMENDMENT OF THE AMENDED COMPLAINT

The Sixth Circuit has held that a District Court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies

in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts"). The Court grants Mills leave to amend the claims dismissed without prejudice, under the conditions set forth below.

IV. **CONCLUSION**

For the reasons explained above:

A. Mills's constitutional claims in the complaint (ECF No. 1) under § 1983 for (1) denial of due process based on the Reclassification and Program Denial, (2) failure to follow TDOC policies and procedures, (3) inadequate prison grievance process, and (4) harassment are DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

B. Mills's constitutional claims in the complaint (ECF No. 1) under § 1983 for (1) retaliation and (2) excessive force (collectively, the "Claims Dismissed Without Prejudice") are DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). Leave to amend the Claims Dismissed Without Prejudice is GRANTED.

C. Amended claims must be filed within twenty-one (21) days of the date of this Order. An amended pleading must comply with the Federal Rules of Civil Procedure, including but not

limited to Rule 8's requirement of a short and plain statement of Mills's claims. An amended complaint supersedes the complaint and must be complete in itself without reference to the prior pleadings. Mills or his counsel must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count. If Mills decides to amend the complaint, he is directed to submit his amended claims on the form for Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983, *see* https://www.tnwd.uscourts.gov/sites/tnwd/files/CivilRightsComplaint.pdf (last accessed Feb. 5, 2025), because district courts are not "required to create" a *pro se* litigant's claim for him. *See Payne v. Secretary of Treasury,* 73 F. App'x 836, 837 (6th Cir. 2003); *see also* ECF Nos. 1-2 – 2-22 (twenty (20) exhibits, on one hundred and six pages (106), attached to the complaint); ECF No. 6 at PageID 138-43 (attachment to complaint). An amended complaint must be complete without reference to a prior pleading. If Mills fails to file an amended complaint within the time specified, the Court will dismiss the complaint's constitutional claims with prejudice and enter judgment.

D. Given that the Court is dismissing the complaint with prejudice in part and without prejudice in part, the Court DENIES the TRO Motion (ECF No. 3) WITHOUT PREJUDICE, subject to Mills's right to re-file the motion if the case proceeds.

IT IS SO ORDERED this  6th  day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

14